HOOD, Judge.
Cloyd J. Maddox seeks a judgment ordering defendant, Louisiana Industries, Inc., to restore the natural flow of water on the plaintiff’s land and condemning defendant to pay damages. Judgment was rendered by the trial court in favor of plaintiff, awarding him damages in the amount of $4,913.00. Defendant appealed.
The issue is whether the award is excessive.
Plaintiff owns a 23.68 acre tract of land in Grant Parish. Defendant leased the land located south of and adjacent to plaintiff’s property for the purpose of min *279 ing it for sand and gravel. A spring fed creek originated on the leased property, and it flowed in a northeast direction, traversing the southeast corner of plaintiff’s tract of land for a distance of about 300 feet. Some of the springs which fed the creek were located on the leased property and some were on plaintiffs land.
In conducting its mining operations defendant caused “overburden” from the leased property to be piled about 20 feet high on the north part of that property, covering a part of the creek and some of the spring heads which fed it. Erosion of this overburden caused silt, sand and clay to be washed into and to accumulate in the creek, both on the leased property and on plaintiff’s land, obstructing the flow of water onto Maddox’s property. A number of natural springs on plaintiff’s tract and on the leased property were stopped up. That condition has existed since July, 1971, and it was still in existence when the case was tried on June 13, 1974.
Plaintiff used his land primarily for pasturing cattle, and the creek provided water for his stock. The evidence shows that silt, sand and clay from the overburden on the leased property filled the creek bed on plaintiff’s land to an average width of 20 feet and an average depth of 2i/¿ feet. The flow of water on plaintiff’s property was not stopped completely, but it caused the creek to be “real muddy,” and in the dry summertime plaintiff’s cattle had to “paw out a hole to get a drink of water.” Some trees along the edge of the creek were killed by this deposit of silt, and a part of the fence along the south line of plaintiff’s property was damaged. The evidence does not show the number of trees which were destroyed, and there is nothing in the record to show the value of those trees or the amount which would be required to repair the damaged fence.
Although the creek bed ran a distance of only 300 feet on plaintiff’s property, the evidence shows that in order to clean out the bed of that stream and to insure the continued flow of water onto plaintiff’s land it will be necessary to remove the overburden from an area 440 feet long, 20 feet wide and 21/2 feet deep.
Vonley C. Cosby, who is engaged in the business of moving dirt, estimated that a total of 1,500 cubic yards of dirt would have to be moved. Based on that estimate, he determined that it would cost $4,420.00 to do the job. He itemized those costs as follows:
Loading the trucks, 1,500 cubic yards at $.60 .$ 900.00
Hauling four miles to dump, 1,500 cubic yards at $1.60 . 2,400.00
Bulldozer rental, seven days at $160.00 per day . 1,120.00
TOTAL .$4,420.00
Cosby conceded that he did not know how to determine the number of cubic yards of dirt which had to be removed, so he had someone else do that computation for him, and he based his estimate on the assumption that there were 1,500 cubic yards of dirt that would have to be moved. We, like the trial judge, understand his testimony to be that his estimate of the cost would be reduced proportionately if less than 1,500 cubic yards of dirt actually had to be removed.
R. H. Klossner, project engineer for defendant, determined that only 815 cubic yards of dirt had to be moved. Using that figure and the rates per cubic yard which had been quoted by Cosby, he estimated that the cost of clearing out the creek bed should be only $2,433.00, which included: $489.00 for loading; $1,304.00 for hauling; and $640.00 for bulldozer rental. His estimates of the loading and hauling charges were based on the assumption that there were only 815 cubic yards of dirt to be moved. He reasoned that if a bulldozer could remove 1,500 cubic yards of dirt in seven days, it should be able to move 815 cubic yards in only four days, and he thus *280 concluded that the cost of renting a bulldozer would be less than that estimated by Cosby.
The trial judge accepted Klossner’s computations as to the number of cubic yards of dirt which had to be removed and as to the loading and hauling charges, but he accepted Cosby’s testimony that it would require the rental of a bulldozer for seven days. He awarded plaintiff $489.00 for loading, $1,304.00 for hauling, and $1,120.-00 for rental of the bulldozer, making a total award of $2,913.00. He also awarded plaintiff $2,000.00 for the loss of the use of his property, depreciation thereof, and the inconvenience and expense which he incurred as the result of the clogging up of the creek.
Defendant concedes that the amount awarded by the trial judge for “loading” is correct. It contends, however, that the awards for hauling, for the rental of a bulldozer, and for loss of use, inconvenience, etc., are excessive and should be reduced.
We agree that only 815 cubic yards of dirt had to be removed, and that the award of $489.00 for loading is correct.
With reference to the estimated hauling expense, defendant contends that it had property located one mile from the Maddox land which was available as a dump site for the overburden which had to be removed, and that by using the closer dump site the cost of hauling could be reduced from $1.60 to $1.10 per cubic yard, thus reducing the total hauling charge to $896.50. The trial judge found that plaintiff had never been granted authority to use defendant’s property for that purpose, and that “there was no permission to use the site tendered in writing in court.” He thus based the award made to plaintiff on the assumption that the dirt would have to be hauled to a dump site four miles away. We find no error in that conclusion of the trial court.
The trial judge accepted Cosby’s statement that it would require the use of a bulldozer for seven days to remove the overburden from the creek, and he rejected Klossner’s reasoning that the use of such a machine should be needed for only four days. We cannot say that he erred in arriving at that conclusion.
Our conclusion is that the evidence supports the award of $2,913.00 made to plaintiff as the cost of removing the silt, sand and clay from the creek.
The trial judge rejected plaintiff’s demand for damages for mental anguish, pain and suffering, but he awarded plaintiff $2,000.00 as damages for the loss of use of his property, depreciation, inconvenience and expense during the time the creek was “covered with this silt.” In making that award, the judge noted that there was no evidence as to the “exact amount” of damages plaintiff sustained in that respect, but he found that “the evidence is clear that he sustained damages and the court fixes those damages in the sum of $2,000.00.”
We agree with the trial court that the evidence fails to show the exact amount of damages plaintiff sustained as the result of the acts of defendant. There is no evidence of stock weight loss, of the death of cattle due to lack of water, of crop damage, of the cost of procuring water for his stock, or of the cost of repairing the fence.
The law is settled, however, that when it is clear that plaintiff has suffered some damages as the result of the fault of defendant, his demands will not be rejected merely because he cannot establish exactly the amount suffered. Under those circumstances the court must fix the quantum as best it can, and in doing so the trial judge is vested with much discretion. Brantley *281 v. Tremont & Gulf Railway Co., 226 La. 176, 75 So.2d 236 (1954); White v. Robbins, 153 So.2d 165 (La.App. 3 Cir. 1963); Harrison v. Petroleum Surveys, 80 So.2d 153 (La.App. 1 Cir. 1955); Berryman v. International Paper Company, 139 So.2d 806 (La.App. 3 Cir. 1962); Ralph’s Fleet, Inc. v. American Marine Corp., 157 So.2d 317 (La.App. 4 Cir. 1963); Peoples Moss Gin Vo., Inc. v. Jenkins, 270 So.2d 285 (La.App. 3 Cir. 1972) ; Wright v. Superior Oil Company, 138 So.2d 688 (La.App. 3 Cir. 1962).
In the instant suit the evidence shows that the creek had been clogged up with silt for a period of about three years prior to the trial. During that time plaintiff was deprived of the natural spring heads and flowing water for his cattle, and it is understandable that he was concerned as to whether his stock would get enough water. Plaintiff made several demands on defendant shortly after the silt began to accumulate in the stream to correct that condition, all of which were to no avail. Although the value of the destroyed shade trees has not been shown, we agree that plaintiff is entitled to recover something as damages for the permanent loss of those trees. Klossner stated that it would be necessary to remove some more trees in order to get equipment in to clear out the creek bed. Plaintiff also has no assurance that the removal of the overburden from the creek bed will restore the flow of water from the natural springs on his property which were stopped up when they were covered with silt.
Although the award of $2,000.00 made by the trial court in addition to the costs of removing the overburden appears to be high, we have decided that it is within the range of the “much discretion” which is vested in the trial court, and that we will not disturb that award.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.